IN THE

# United States Court of Appeals

## FOR THE TENTH CIRCUIT

➤➤◄◄

JOHN DOE,

*Plaintiff-Appellant,*

*v.*

UNIVERSITY OF DENVER; UNIVERSITY OF DENVER BOARD OF TRUSTEES; REBECCA CHOPP, individually and as agent for University of Denver; KRISTIN OLSON, individually and as agent for University of Denver; JEAN MCALLISTER, individually and as agent for University of Denver; KATHRYNE GROVE, individually and as agent for University of Denver; ERIC BUTLER, individually and as agent for University of Denver,

*Defendants-Appellees.*

_____

*On Appeal from the United States District Court*
*for the District of Colorado (Denver)*
*Honorable Philip A. Brimmer, U.S.D.J.*
*Case No. 1:16-cv-00152-PAB-STV*

# REPLY BRIEF FOR PLAINTIFF-APPELLANT

Michael J. Mirabella
Patricia Mellen
MICHAEL J. MIRABELLA, P.C.
1888 Sherman Street, Suite 200
Denver, Colorado 80203
720-538-0362

Philip A. Byler
Andrew T. Miltenberg
Stuart Bernstein
Jeffrey Berkowitz
Tara J. Davis
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
212-736-4500

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................iv

PRELIMINARY STATEMENT ............................................................1

REPLY ARGUMENT ...........................................................................3

I.    DEFENDANTS' DEFICIENT STATEMENT
OF THE CASE.............................................................................3

    A.    Omitted: John's Account Of The Sexual Encounter............................3

    B.    Omitted: Lapse of Time And Boyfriend Makes Report ......................4

    C.    Omitted: Substance Of Initial Interview Of Jane Doe .........................4

    D.    Omitted: Substance Of Interviews ........................................................5

    E.    Omissions As To Preliminary and Final Investigation Reports............5

    F.    Omitted: Substance Of OEO Decision Letter ......................................7

    G.    Omitted: Outcome Council Panelist Positions and
Extent Of Sanction ................................................................................7

    H.    Omitted: Appeal Grounds and Appeal Decision Rationale .................8

II.    DEFENDANTS' DEFICIENT STATEMENT OF
SUMMARY JUDGMENT AND WAIVER LAW ......................................9

    A.    Summary Judgment................................................................................9

    B.    Waiver ....................................................................................................10

III.    JOHN'S TITLE IX CLAIM .................................................................10

    A.    Gender Make Up of Complainants and Respondents .........................11

        1.    Mischaracterization of John's Case ..........................................11

        2.    Female Complainants/Male Respondents...................................12

        3.    University Responsibility..........................................................13

    B.    University Encouragement of Sexual
        Misconduct Reporting ........................................................................14

    C.    Biased Training .................................................................................16

        1.    Totality of the Circumstances ..................................................16

        2.    Biased Training Discussed In Gruber Report ...........................16

        3.    "Survivors".............................................................................18

    D.    Resources for Complainants, Not For Male Respondents .................19

    E.    Investigator Bias...............................................................................20

    F.    Severity of Sanction .........................................................................21

    G.    Totality of Circumstances .................................................................23

    H.    The Gruber Testimony Helps Show Gender Bias As
        A Motivating Factor Behind The Erroneous Expulsion .....................23

        1.    No Waiver................................................................................23

        2.    A Final Judgment Brings Up All Issues ...................................24

    I.    Title IX Decisions Concerning Sexual
        Misconduct Do Not Involve Discretion .............................................25

IV. JOHN'S DUE PROCESS CLAIM ..............................................................25

V. JOHN'S BREACH OF CONTRACT CLAIM...........................................28

CONCLUSION ....................................................................................................29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF PRIVACY REDACTIONS

CERTIFICATION OF IDENTICAL HARD COPIES

CERTIFICATE OF VIRUS SCAN

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*,
    531 U.S. 288 (2001).................................................................................2, 26

*Browns v. Mitchell*, 409 F.32d 593 (10th Cir. 1969) .................................27

*Davis v. Monroe Bd. of Education*, 526 U.S. 629 (1999).........................25

*Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016) ....................................14, 21

*Doe v. Columbia College Chicago*, 299 F.Supp.3d 939
    (N.D. Ill. 2017) ................................................................................15

*Doe v. Cummins*, 662 Fed. App'x 437 (6th Cir. 2016)............................13

*Doe v. Miami*, 882 F.3d 579 (6th Cir. 2018)..........................................13

*Doe v. Purdue*, 281 F.Supp.3d 754 (N.D. Ind. 2017).............................12

*Doe v Univ. of Colorado*, 255 F.Supp.3d 1064 (D. Colo. 2017).......... 12-13

*Doe v. Washington and Lee*, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015)............15

*Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1995)............26

*Gassett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*,
    245 F.3d 1172 (10th Cir. 2001) ..................................................... 9-10

*Grandbouche v. Clancy*, 825 F.2d 1463 (10th Cir. 1987) ................................. 24-25

*Gutierrez v. Cobos*, 841 F.3d 895 (10th Cir. 2016) ......................................9, 14, 20

*Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995 (10th Cir. 2014) .....................9

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) .....................................26

[iv]

*Lyons v. Jefferson Bank & Trust,* 994 F.2d 716 (10th Cir.1993) ...........................18

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
  663 F.3d 81(2d Cir. 2011) ...............................................................25

*Pine Telephone Co., Inc. v. Alcatel Lucent USA Inc.,*
  617 Fed. App'x 846 (10th Cir. 2015) ............................................18

*Pioneer Centres Holding Co. Employee Stock Ownership Plan & Tr.*
  *v. Alerus Fin., N.A.*, 858 F.3d 1324, 1333-1334 (10th Cir. 2017),
  *cert. dismissed*, 2018 WL 4496523 (U.S. Sept. 20, 2018) ............................9

*Pittsburg & Midway Coal Min. Co. v. Yazzie*, 909 F.2d 1387 (10th Cir. 1990) .......9

*Ribeau v. Katt*, 681 F.3d 1190 (10th Cir. 2012) ...............................................14, 20

*Richison v. Ernest Grp., Inc.*, 634 F.3d 1123 (10th Cir. 2011)..........................10, 17

*Rochez v. Mittleton*, 839 F.Supp. 1075 (S.D.N.Y. 1993) .................................. 26-27

*Tele–Communications, Inc. v. Commissioner of Internal Revenue*,
  104 F.3d 1229 (10th Cir. 1997) ...............................................................10, 23

*United States v. Johnson*, 732 Fed. App'x 638 (10th Cir. 2018)........................10, 17

*Yusef v. Vassar Corp.*, 35 F.3d 709 (2d Cir. 1994)....................................................1

*Yu v. Vassar*, 97 F. Supp.3d 448 (S.D.N.Y. 2015) ...........................................20, 25

## Constitution, Statutes and Rules

Fourteenth Amendment, U.S. Constitution ................................................... 2, 25-28

Rule 54, Federal Rules of Civil Procedure ............................................................13

Rule 56, Federal Rules of Civil Procedure ............................................................9

Rule 702, Federal Rule of Evidence ......................................................................25

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ......... 1-2, 10-25

## Other Authorities

A.Gruber, *Anti-Rape Culture*, 64 U. Kansas L. Rev. 1027 (2016)....................18, 22

Secretary Betsy DeVos, Prepared Remarks on Title IX Enforcement, Sept. 7, 2017, www.ed.gov/news/speeches/secretary-devos-prepared-remarks-title-ix-enforcement ........................................................................................2

Department of Education Office for Civil Rights, Apr. 4, 2011, https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html ....1, 11, 15, 24, 27, 28

Department of Education Office for Civil Rights, Sept. 22, 2017, https://www.cmu.edu/title-ix/colleague-title-ix-201709.pdf................... 13-14

## STATEMENT OF NO PRIOR OR RELATED APPEALS

Per Tenth Circuit Rule 28.2(C)(1), there are no prior appeals and no related appeals.

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff-Appellant John Doe ("John") submits this Reply Brief to address the Appellee Brief of Defendants-Appellees University of Denver ("DU") and DU individuals (collectively, "Defendants") and thereby provide further support of John's appeal from the District Court's Final Judgment granting summary judgment dismissing the Complaint for Title IX discrimination, denial of constitutional due process and state law claims.

<u>**Title IX and Gender Bias**</u>: Summary judgment for lack of evidence of gender bias was error because John's evidence (*see* Appellant Br. 17-46) establishes "particular circumstances suggesting gender bias was a motivating factor behind the erroneous findings" for an "erroneous outcome" case of unlawful Title IX discrimination. *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). In contrast, Defendants have flawed arguments concerning gender bias. Bias in favor of sexual misconduct complainants does translate to bias against males because the reality is of female complainants/male respondents in these campus sex tribunals and because the creation of these campus sex tribunals was conceived to deal with what was represented in the April 2011 Dear Colleague Letter to be a crisis of sexual assault against women -- 1 in 5 *women* on campus were said (erroneously) to be victims of sexual assault. John is not relying upon disparate impact theories; that is a red herring to distract from the fact that the campus tribunals were conceived to

address sexual assault against *women*, which meant that males would be the accused respondents. John is not expressing a disagreement with the disciplinary case result, but rather John has brought this case because Defendants violated Title IX by erroneously disciplining John for non-consensual sex that was consensual when a motivating factor for the discipline was John's sex. Defendants' waiver argument is incorrect as a matter of law and the record.

**Denial of Due Process and State Action**: Summary judgment for lack of state action was error because Defendants exercised traditional state authority as to sex crimes and, under applicable U.S. Supreme Court law, were state actors in the context of sexual misconduct proceedings. *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 296 (2001). (Appellant Br. 46-56.) In contrast, Defendants have the flawed arguments on state action. Defendants' waiver argument is again incorrect on the law and record. John's state action argument is based on governing U.S. Supreme Court case law. The prosecutorial function has most certainly been a state function. That campus sexual misconduct proceedings have not provided due process and males have been erroneously disciplined in gender biased Title IX university proceedings nationwide caused Department of Education Secretary Betsy DeVos to denounce these proceedings as denying due process in a manner that is wholly un-American: www.ed.gov/news/ speeches/secretary-devos-prepared-remarks-title-ix enforcement.

**State Law:** Dismissal of the state law claims for lack of jurisdiction was error because John's federal claims were incorrectly dismissed on summary judgment.

## REPLY ARGUMENT

## I.

## DEFENDANTS' DEFICIENT STATEMENT OF THE CASE

Defendants' statement of the case (Appellee Br. 1-8) omits material facts, rendering it unsuitable as a basis for summary judgment.

### A.  Omitted: John's Account Of The Sexual Encounter.

Omitted from Defendants' statement of the case is a description of John's account of the sexual encounter with Jane Doe their freshman year.  (*See* Appellee Br. 1-8).  Instead, Defendants begin with John's familiarity with the DU's Office of Equal Opportunity ("OEO"), its policy of dismissal for non-consensual sexual contact and its definitions of non-consensual sexual contact and coercion.  (Appellee Br. 1-2.)

The consequence of the omission is that in Defendants' version (Appellee Br. 1-2), John is a male who knows the rules, instead of as a DU freshman student who lost his virginity to an experienced female freshman student in Jane Doe during the night of October 8-9, 2014, in a sexual encounter initiated by Jane Doe involving intercourse three times using multiple positions. (A231-234, 456, 1453-1454, 1457.)

**B.**    <u>**Omitted: Lapse of Time and Boyfriend Makes Report.**</u>

The next subject in Defendants' statement of the case is the report of sexual misconduct on April 15, 2015 against John involving Jane Doe, which Defendants state without disclosing the report was done by Jane Doe's new boyfriend more six months after John's and Jane Doe's sexual encounter on October 8-9, 2014. (*See* Appellee Br. 2-3.) Instead, Defendants refer to a Campus Safety Office meeting on April 24, 2015 with Jane Doe to discuss "her report" and the Campus Safety Office then sending its report of non-consensual sexual contact to DU's OEO. (Appellee Br. 2.)

**C.**    <u>**Omitted: Substance Of Initial Interview Of Jane Doe.**</u>

Defendants state OEO Director/Title IX Coordinator Grove and Investigator Butler ("the Investigators") met with Jane Doe on May 1, 2015 for an informational meeting and then interviewed Jane Doe on May 5, 2015. (Appellee Br. 2, 3.) But Defendants don't state what account Jane Doe gave of the sexual encounter with John Doe on October 8-9, 2014; her account in fact included her having sex with John multiple times. (*See* Appellee Br. 1-8; A223-225, A543-544.) Defendants instead discuss the experience of the DU Investigators in conducting Title IX investigations. (Appellee Br. 2, 3.) The consequence of omitting Jane Doe's May 5, 2015 account is that the changing and thus less credible story of Jane Doe concerning her sexual encounter with John is obscured.

**D.  Omitted: Substance Of Interviews.**

Defendants review the Investigators' procedure of witness interviews, who was interviewed during the investigation after Jane Doe, the opportunities for review and input by John during the investigation and Investigator Butler's letter to John, saying "an expression of concern has been filed that you [John] have allegedly committed the following prohibited conduct: Non-Consensual Sexual Contact." (Appellee Br. 3-5.)

Defendants do not review: (i) the substance of any witness interviews; (ii) that Investigator Butler's letter to John did not identify the complaining party, the date or location of the alleged incident, or the specific conduct at issue; (iii) that the first time John was provided Jane Doe's statement, it was on May 27, 2015 when the Investigators interviewed John for four hours and when John gave a statement providing an account of the evening; (iv) the account of Jane Doe given on May 29, 2015, that had major inconsistencies with the account given on May 5, 2018; and (v) the substance of the supplemental interview of John Doe on June 15, 2018.  (*See* Appellee Br. 3-5; A108, 215, 231-232, 240-242, 382-383, 400, 449, 512, 1413.)

**E.  Omissions As To Preliminary and Final Investigation Reports.**

Defendants state that on June 26, 2015, the Investigators gave to John and Jane Doe a Preliminary Report. (Appellee Br. 5-6; A543-564.) Defendants do not

mention the Preliminary Report referenced for the first time John's alleged use of coercion. (*See* Appellee Br. 5-6; A543.)

Defendants state that on July 14, 2015, the Investigators issued a Final Report containing DU's findings and conclusions as to "whether the facts established a violation of the University's Equal Opportunity policies on non-consensual sexual contact based on coercion" and that the Investigators concluded John was less credible than Jane Doe and thus, it was more likely than not he had engaged in non-consensual sexual contact by means of coercion. (Appellee Br. 6-7; A108-109, 306.)

Defendants do not review that: (i) at no time was John afforded a hearing during which he could confront his accuser or challenge any evidence against him; (ii) the Investigators' credibility assessment was based on a determination that John's "version of the dialogue" between him and Jane Doe prior to the sexual encounter seemed "to be far less natural, and ultimately less likely" and a "robust attempt to paint a particularly promiscuous picture of [Jane Doe]"; (iii) the Investigators disregarded significant inconsistencies between Jane Doe's initial report to the Campus Safety Office; (iv) the Investigators disregarded Jane Doe's second statement altogether; (v) the Investigators relied heavily on John's inability to recall eight months later the reason he left his room for a few moments (and returned to find Jane Doe in his bed) to find him not credible; (vi) the Investigators did not interview M.G., the friend of Jane Doe to whom she described the encounter

days after it occurred because, supposedly, M.G.'s characterization of the encounter was not relevant; and (vii) the Investigators concluded the factors compromising John's credibility were consistent with the innate motive that John would have to deny any wrongdoing. (A216, 389, 414, 447, 449-450, 451, 453-454.)

## F.    Omitted: Substance Of OEO Decision Letter.

Defendants state that on July 15, 2015, Investigator Butler sent a letter to John, reiterating the Investigators' finding of responsibility. (Appellee Br. 6.) Defendants do not say that the letter of July 15, 2015: (i) was the formal letter of the Office of Equal Opportunity to John informing him responsible for Non-Consensual Sexual Contact; (ii) failed to provide any rationale or identify the evidence that corroborated such findings; and (iii) simply asserted "The Investigators find it more likely than not that [John's] actions on the night of October 9, 2014 resulted in non-consensual sexual contact with [Jane Doe] by means of coercion in violation of the University's Equal Opportunity policies." (*See* Appellee Br. 6; A159-160.)

## G.    Omitted: Outcome Council Panelist Positions and Extent Of Sanction.

Defendants state that on Friday, July 17, 2015, Student Conduct Director Olson notified John that the Outcome Council would convene to determine the sanctions, but does not identify the positions of the Outcome Council panelists. (Appellee Br. 7; A161, 162.) Defendants state that on July 20, 2015, the Outcome Council convened and that on July 22, 2015, Olson issued to John a Dismissal Letter

stating that the Outcome Council had determined "it is in the University's best interests to remove the student respondent [John] from the campus community due to the nature and severity of [John's] actions and in an effort to protect the community." (Appellee Br. 7; A163.) Defendants do not mention that the Outcome Council's sanction of permanent dismissal included a no trespass order, banning John from all DU premises. (*See* Appellee Br. 7; A163.)

## H. Omitted: Appeal Grounds and Appeal Decision Rationale.

Defendants state that on July 27, 2015, John appealed the decision of the Outcome Council and characterize the grounds of appeal as failures of the Investigators with respect to the inclusion of evidence and the techniques employed. (Appellee Br. 8.) Defendants do not mention John's statement that his appeal was based on procedural errors and do not mention John's elaboration of those procedural errors, such as the failures of the Investigators: to ask for records showing that Jane Doe had continued contact with John after their sexual encounter; to learn that John was a virgin before the sexual encounter with Jane Doe; to find out about Jane Doe's regular marijuana use; and to consider that it was the new boyfriend who made the complaint and that false rape allegations are made when the woman is in a new relationship. (*See* Appellee Br. 8; A165-167.)

Defendants state that on July 30, 2015, Associate Provost of Graduate Studies Barbara Wilcots affirmed the Outcome Council decision and sanctions in a letter to

John stating her rationale. (Appellee Br. 8; A168-170.)  Defendants do not say what the rationale of Provost Wilcox was and that she denied investigator failures constituted procedural errors.  (*See* Appellee Br. 8; A169.)

## II.

### DEFENDANTS' DEFICIENT STATEMENT OF SUMMARY JUDGMENT AND WAIVER LAW

**A.**    **Summary Judgment.**

For the standard on summary judgment, the DU Defendants cite *Pioneer Centres Holding Co. Employee Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1333-1334 (10th Cir. 2017), *cert. dismissed*, 2018 WL 4496523 (U.S. Sept. 20, 2018), for the proposition that once a moving party meets its burden, the nonmoving party must set forth evidence sufficient for a reasonable jury to return a verdict in its favor.  This presupposes that under Fed. R. Civ. P. 56(a), the moving party has come forward with a showing that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, *Guitierrez v. Coboa*, 841 F.3d 895, 900 (10th Cir. 2016), a showing that the movant bears the burden of demonstrating, *Pittsburg & Midway Coal Min. Co. v. Yazzie*, 909 F.2d 1387, 1427 (10th Cir. 1990).  *Pioneer Centres* recognizes (858 F.3d at 1334) that the district court must draw all reasonable inferences in favor of the nonmoving party, citing *Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1004 (10th Cir. 2014), but fails to note that at the summary judgment stage, the court "may not make

credibility determinations or weigh the evidence." *Gassett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1175 (10th Cir. 2001).

**B.**     **Waiver.**

For waiver law, Defendants cite *Tele–Communications, Inc. v. Commissioner of Internal Revenue*, 104 F.3d 1229, 1232 (10th Cir. 1997), for the proposition that "[g]enerally, an appellate court will not consider an issue raised for the first time on appeal," but omit the point in that case about discretion given to the Courts of Appeals.  Defendants mistakenly argue "waiver," which as discussed below, is erroneous as a matter of the law and the record.  *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-1128 (10th Cir. 2011) (waiver versus forfeiture), and cases cited therein; *United States v. Johnson*, 732 Fed. App'x 638, 644 (10th Cir. 2018) (citing 10th Circuit Rule 28.2(C)(2), no forfeiture if the point is in the record and subject to a Court ruling).

## III.

## JOHN'S TITLE IX CLAIM

Defendants' argument that summary judgment should have been granted due to the lack of evidence of gender bias consists of a series of rationalizations as to the evidence of gender bias that in fact constitutes ample evidence for a reasonable jury to conclude that a motivating factor in John's erroneous expulsion was gender bias.

**A.    Gender Make Up of Complainants and Respondents.**

Defendants, in arguing that DU has no control over the gender make up of students who accuse other students of sexual misconduct (Appellee Br. 14-19), does not address the university responsibility under Title IX to administer a fair process that does not favor females or males.  Universities have been aware that in instituting these sexual misconduct tribunals, the reality of female complainants/male respondents would occur.  The April 2011 Dear Colleague Letter announced that universities had to do to comply with Title IX by implementing disciplinary proceedings to combat rape of women on campus, since 1 in 5 women were being sexually assaulted, and do so in a way that was not too unfavorable for complainants so as to comply with Title IX.  https://www2.ed.gov/about/offices/letters/colleague-201104.html. (Appellant Br. 23-25.)  Defendants' assertion that John cannot use the gender makeup of complainants versus respondents to prove gender bias (Appellee Br. 14) is wrong; it is a matter of how it is used.

**1.    Mischaracterization of John's Case.**

Defendants defend the District Court's mischaracterization of John's case as flowing from the reality of female complainants/male respondents.  (Appellee Br. 14-15.)  But John's point still stands that the reality of female complainants/male respondents is part of a gender biased process that manifests itself in university encouragement of sexual misconduct reporting, biased training, resources for

complainants but not for respondents, investigator bias and severe sanctions of males.

## 2.    <u>Female Complainants/Male Respondents.</u>

Defendants assert that John "quibbles" with the District Court's understatement of the reality of female complainants/male respondents when saying "the majority" of complainants are female and "the majority" of respondents are male. (Appellee Br. 15-16.) It is, however, not quibbling to point out that in 35 cases one year at DU, 34 -- almost all complainants -- were females and all 35 respondents were males (Appellant Br. 22) and that the reality here is of female complainants/male respondents -- period -- a pattern repeated elsewhere such that 99% of respondents are male (Appellant Br. 23). To use the word "the majority" instead of "almost all" makes more plausible an incorrect disconnect between reality and a denial of gender bias.

Defendants cite cases that have stated no gender bias can be inferred from the reality of female complainants/male respondents. (Appellee Br. 16.) *Doe v. Purdue*, 281 F.Supp.3d 754 (N.D. Ind. 2017), did say that and also rejected *Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016); however, the *Doe v. Purdue* decision was appealed by the undersigned Counsel of Record and is under review by the Seventh Circuit, which heard oral argument on September 18, 2018, from the undersigned Counsel of Record. *Doe v. Univ. of Colorado*, 255 F.Supp.3d 1064 (D. Colo 2017), did say

that no gender bias can be inferred from the reality of female complainants/male respondents; however, that decision will be appealed to this Court by the undersigned Counsel of Record once a Final Judgment of the case is entered, as the District Court denied a Rule 54 motion to allow a more immediate appeal. *Doe v. Cummins*, 662 Fed. App'x 437 (6th Cir. 2016), denied gender bias from the fact of female complainants/male respondents; however, the officially reported, more recent decision of the Sixth Circuit in *Doe v. Miami*, 882 F.3d 579 (6th Cir. 2018), takes a different approach in upholding a male respondent's Title IX suit.

Contrary to Defendants' assertion (Appellee Br. 17), John is not making a disparate impact argument. John's Title IX theory is the well-recognized "erroneous outcome" theory.

### 3.    <u>University Responsibility.</u>

Defendants misstate John's argument as saying that "because the [April 2011] Dear Colleague Letter made reference to statistics on sexual assault against women on campus, any procedure that DU set up to comply with the [April 2011] Dear Colleague Letter must necessarily be motivated by gender bias." (Appellee Br. 17-18.) The phrases "because the [April 2011] Dear Colleague Letter made reference to statistics on sexual assault against women on campus" and "any procedure that DU set up. . . " make the assertion incorrect. Notably, Defendants do not mention the September 2017 Dear Colleague Letter discussed in the Appellant Brief at pages

24-25. The September 2017 Dear Colleague Letter and accompanying Q&A (A633-641), criticized the April 2011 Dear Colleague Letter for directing that schools use sexual misconduct procedures with reduced protections for the accused, which has meant that male respondents such as John are sanctioned.

Universities are responsible to operate their sexual misconduct disciplinary procedures to comply with Title IX. DU, knowing the gender make up of complainants and respondents, wrongly established a "victim-centered" investigative process relying on a preponderance of the evidence burden of proof while allowing no hearing (A440-441), and then did not attend to what is required for fairness to male respondents. University administrators' employment of processes that unfairly favor a female complainant over a male respondent provides the basis for an inference that the administrators were in fact so motivated by gender bias. *Doe v. Columbia*, 831 F.3d 46, 57-58 (2d Cir. 2016).

## B.     University Encouragement of Sexual Misconduct Reporting.

Defendants' argument to discount evidence of gender bias in the university encouragement of sexual misconduct reporting (Appellee Br. 19-22) is at odds with the well-established summary judgment rule that the District Court must draw all reasonable inferences in favor of the nonmoving party. *Gutierrez v. Cobos*, 841 F.3d at 900; *Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012).

Contrary to Defendants, there is nothing "vague" about the evidence of encouragement of reporting that took the form of posters proclaiming "if you regret it, it was rape" (A426): the consequence of such encouragement was an increase in the number of sexual misconduct complaints, which meant more male respondents (A426-427).

Contrary to Defendants, that encouragement cannot be rationalized away by misdescribing it as gender neutral given the reality of female complainants/male respondents and the April 2011 Dear Colleague Letter's justification for universities to conduct sexual misconduct tribunals in combatting rape of women. Further, transmogrifying consensual sex into non-consensual sex based on later regrets is discriminatory. *Doe v. Washington and Lee University*, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015).

Contrary to Defendants, the specifics of the encouragement of reporting here distinguishes it from what was described in *Doe v. Columbia College Chicago* as "legitimate preventive policies and events." 299 F.Supp.3d 939, 955 (N.D. Ill. 2017).

Contrary to Defendants, John is not making a disparate impact argument when pointing out that not every complaint of sexual misconduct results in a finding of responsibility does not negate evidence of gender bias in encouragement of sexual misconduct reporting of the type done at DU. The point is that DU has what

Professor Gruber described as a gender biased process, including investigation "methods" and disparate treatment of credibility seemingly designed to find the male responsible, gender stereotyping, flawed notions of coercion and intent adverse to males, and misinterpretation of the preponderance standard leading to more male responsibility findings. (A439-462.)

## C.   Gender Biased Training.

Defendants erroneously attack the evidence of gender biased training.

### 1.   Totality of the Circumstances.

Defendants insist that the District Court considered John's evidence of gender biased training in the totality of the circumstances. (Appellee Br. 22-23.) With respect to training materials, however, the District Court did not do so. Defendants ignore the District Court's own words: "even assuming that DU's Title IX training materials and resources indicate preferential treatment of complainants, such evidence does not, *standing alone*, support an inference of gender bias." (A1475; emphasis added.)

### 2.   Biased Training Discussed In Gruber Report.

Defendants do not dispute on the merits the Gruber report's analysis of the record on gender biased training. Gruber pointed out that the training given by Investigator Butler, OEO Director/Title IX Coordinator Grove and Director of Student Conduct Olson was gender biased by misinforming attendees: (i) that

campus rapes are frequent and underreported and (ii) that inconsistent to incomplete complainant testimony is due to trauma and is therefore evidence that complainant is telling the truth. Also, DU employees were trained to see campus sexual assault as a crisis, complainants as victims, respondents as offenders and sexual assault what boys do to girls. (Appellant Br. 28-29; A442-443.)

What Defendants argue, erroneously, is "waiver" because they say it was not in the summary judgment briefing. Gruber's analysis was not "waived" because there was no intentional relinquishment of the argument and it was not "forfeited" because the Gruber's analysis was raised before the District Court in opposition to Defendants' motion for summary judgment and in opposition to Defendants' motion to preclude. *Richison v. Ernest Grp., Inc.*, 634 F.3d at 1127-1128 (waiver versus forfeiture); *United States v. Johnson*, 732 Fed. App'x at 644 (citing 10th Circuit Rule 28.2(C)(2), no forfeiture if the point is in the record and subject to a Court ruling). The Gruber Report was an exhibit (A439-462) to John's opposition to summary judgment (A304-573) and is cited in support of the proposition that DU Investigator Butler lacked an appropriate understanding of Title IX law and the preponderance of the evidence standard in carrying out his investigation (A326-327). Gruber's report and Gruber's deposition testimony (A803-1443) were put before the District Court as relevant and helpful to the jury to understand the evidence as to gender bias in opposition to Defendants' motion to preclude (A767-1443); how Gruber

explained gender bias in DU's proceedings was pointed out to the District Court (A776-777); and Professor Gruber's articles are part of that record (A840-1167), particularly "Anti-Rape Culture" (A1048-1074) that is a primer on gender bias in campus sexual misconduct tribunals that the Court should read. The point of the Gruber testimony is to show gender bias in the DU process, which the Gruber testimony does (A439-462).

The case cited by Defendants, *Tele-Communications, Inc. v. Commissioner of Internal Revenue,* 104 F.3d 1229, 1232 (10th Cir. 1997), involved a complete change of legal theory, which is not the case here. A gender biased process, including as to training and investigation, was and remained the theory. *Pine Telephone Co., Inc. v. Alcatel Lucent USA Inc.,* 617 Fed. App'x 846, 854 (10th Cir. 2015), citing *Lyons v. Jefferson Bank & Trust,* 994 F.2d 716, 722 (10th Cir.1993).

### 3.  <u>"Survivors."</u>

Defendants defend not finding gender bias reflected in a DU training titled "Understanding Title IX and Responding to Survivors" which directed attendees to "empower the survivor" and "communicate that you believe the survivor." (Appellee Br. 24-25; A519.)  But Defendants do so by repeating the canard that "survivor" is gender neutral, which it is not in the context of campus sexual misconduct tribunals.  If complainants are female and accused are male, as they are at DU (and elsewhere), these "survivor" statements constitute a university directive

to bias investigations in favor of females by presuming their accounts to be true and that they are victims who have survived sexual assault. (Appellant Br. 29-30.)

Defendants argue the process may be "victim centered, but not gender biased," citing a few cases, but that is: (i) trumping reality with a theoretical but non-existent possibility of females being both victims and accused and males being both victims and accused; and (ii) ignoring what these sexual misconduct tribunals have been about. If the system is victim centered, it is not neutral and impartial; the reality is that males are the "accused" respondents and females are the "victim" complainants; and the conception of these campus sexual tribunals in April 2011 Dear Colleague Letter has been to protect women. (Appellant Br. 31.)

## D.  <u>Resources for Complainants, Not For Male Respondents.</u>

Defendants defend the District Court's ruling rejecting that disparate resources were given to John and Jane Doe to navigate the Title IX process and rejects that gender bias could be inferred from the fact "some" of the resources are complainant specific. (Appellee Br. 27-28; A1476.) But Defendants do not deal with the District Court's failure to portray accurately the record and reliance on an inapposite case. That John and Jane Doe received the same list of support ignores that *all* the resources were complainant specific and that the Center for Advocacy and Prevention and Empowerment ("CAPE") has not provided support to male students accused of sexual assault. (Appellant Br. 32-33.) The District Court failed

to follow the summary judgment rule of drawing reasonable inferences (here, gender bias) in favor of the nonmoving party. *Gutierrez v. Cobos*, 841 F.3d at 900, *quoting Ribeau v. Katt*, 681 F.3d at 1194. As for *Yu v. Vassar College*, 97 F.Supp.3d 448 (S.D.N.Y. 2015), the Appellant Brief at pages 45-46 showed that it is beside the point and an unwise outlier.

**E.**     **Investigator Bias.**

Defendants defend the District Court's rejection of investigator bias (Appellee Br. 28-33) but does so without addressing the District Court's three errors.

1.     Defendants misstate John's point when asserting he contends the Investigators demonstrated bias by finding him responsible despite his version of the facts. (Appellee Br. 29.) Not so. John contends that given what the District Court recognized the evidence showed -- that Jane Doe initiated the sexual contact, that John and Jane Doe "spooned" at her request and then engaged in sexual intercourse multiple times and switched positions when doing so, that Jane Doe never attempted to wake John's roommate who was sleeping a few feet away and that Jane Doe was not physically restrained or otherwise prevented from leaving the room during the sexual encounter (A1473) -- saying the Investigators "considered" the accounts of John and Jane Doe (A1477) begs the question of *how* they considered the accounts, which was with gender bias (*see* Appellant Br. 33-34).

2.     Defendants attempt to distinguish what the Second Circuit stated in *Doe v. Columbia*, 831 F.3d at 57-58, was "[w]hen the evidence substantially favors one party's version of a disputed matter but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer . . . that the evaluator has been influenced by bias." *Doe v. Columbia* was on a motion to dismiss, but the quoted point about bias is true regardless of procedural posture.  Defendants erroneously attempt to say the facts are different here; in fact, as is apparent to the Counsel of Record here who was the winning Counsel of Record in *Doe v. Columbia*, the two cases are quite similar in a responsibility finding premised on "coercion" that was contrary to the facts of the sexual encounter.

3.     Defendants dismiss as not material the nine errors cited in the Gruber report in the investigation that benefitted complainant Jane Doe (Appellee Br. 32); but a review of those nine errors (Appellant Br. 35; A444-461) shows them to be serious and fundamental.  Summary judgment rules (pp. 9-10 above) do not permit this argument. Defendants' waiver argument is without merit for the same reason that was discussed above (pp. 17-18).

**F.     Severity of Sanction.**

Defendants defense of the District Court's rejection of John's argument on the severity of sanction does not address the reasons why the District Court erred.

1.     Defendants have no answer to the point that the severity of sanction

reflects a gender biased belief that males need to be sanctioned severely for sexual misconduct (A1046-1074: Gruber, *Anti-Rape Culture*, 64 U. Kansas L. Rev. 1027 (2016)) and that by all accounts, on the night of October 8-9, 2014, Jane Doe got into John's bed in John's room and ended up having sex multiple times in different sexual positions with John with John's roommate a few feet away and with no physical restraint on Jane Doe, and Jane Doe did not file a complaint until her new boyfriend did six months later on April 15, 2015 -- and yet, John was hammered with an expulsion.

2.      Defendants have no answer to the point that an inference of gender bias may be drawn from the apparent failure of the Outcome Council to consider, per DU's Policies, John had no prior disciplinary issues, John and Jane Doe were on campus together and had no incidents in the six-month period between the one night of sex in early October 2014 and the April 2015 complaint, there was no interim suspension after the complaint, there was only one complainant, physical violence was not involved, there was no criminal investigation. (Appellant Br. 37; A492.)

3.      Defendants say the District Court allowed for but did not require a showing that women received lesser sanctions for similar conduct (A1478-1479), but what the District Court stated still makes no sense because there are no female respondents, much less female respondents accused of rape.

### G.   Totality of Circumstances.

Contrary to Defendants (Appellee Br. 35), the totality of the circumstances discussed in the Appellant Brief (pp. 20-38) and above (pp. 11-22) establishes that a reasonable jury could find that gender bias was a motivating factor in the decision to expel John.

### H.   The Gruber Testimony Helps Show Gender Bias As A Motivating Factor Behind The Erroneous Expulsion.

Defendants make two technical arguments to counter John's substantive point that the Gruber report helps show gender bias was a motivating factor in the erroneous expulsion of John.  (Appellee Br. 35-38.)  Both are without merit.

#### 1.   No Waiver.

Defendants' first technical argument is that John "waived" the argument that the Gruber report helps show gender bias.  (Appellee Br. 35-37.)  As was discussed above in connection with gender biased training and investigation (pp. 17-18, 21-22), Defendants' waiver argument is without merit: Gruber's analysis was not "waived" because there was no intentional relinquishment of the argument and it was not "forfeited" because the Gruber's analysis (A439-462) was raised before the District Court in opposition to summary judgment (A304-573) and in opposition to Defendants' motion to preclude (A767-1443); *Tele-Communications, Inc. v. Commissioner of Internal Revenue,* 104 F.3d 1229, is off point.

Defendant's argument that the discussion of gender bias presented in Gruber's

report are new arguments that "were never presented to the District Court" misrepresents the record. Contrary to Defendants' contention that Gruber's testimony was limited to John's breach of contract action, in opposing Defendants' motion to exclude, John articulated for the District Court how Gruber's opinions and observations were relevant in permitting a jury to assess "(i) how an influential set of gendered beliefs regarding sexual assault developed over time, and was inserted into the national consciousness after the [April 2011 Dear Colleague Letter], and consequent media coverage of high profile cases, and (ii) procedural deficiencies in Title IX investigations, including DU's, may or may not indicate that Defendants were influenced by national and local pressure to support female complainants." (A776). John further established that Gruber was engaged to opine on the "presence of gender bias in DU's sexual misconduct process," noting her expertise "on feminism and violence against women…the gendered nature of rape law and policy…the history of 'rape myths,' and how gendered and feminist views of rape have impacted Title IX investigations on college campuses." (A770).

### 2.  <u>A Final Judgment Brings Up All Issues.</u>

Defendants' second technical argument is that the issue of the admissibility of Gruber's testimony is not before this Court.  (Appellee Br. 37-38.)  Defendants forget that in federal court, there is a final judgment rule, the appeal from which raises all interlocutory matters such as the admission of evidence.  *Grandbouche v.*

*Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987). As explained in the Appellant Brief (pp. 38-44), it was error for the District Court to rationalize not ruling on Defendants' motion to exclude the Gruber testimony (A1481) -- not to decide is still a decision -- because deficiencies identified by Gruber were related to gender bias and the motion should have been denied under Federal Rule of Evidence 702. As noted above (pp. 17, 21-22), the Gruber report helps understand why gender bias is shown.

## I.    Title IX Decisions Concerning Sexual Misconduct Do Not Involve Discretion.

Defendants defend the District Court's misapplication to Title IX compliance of the traditional deference given to schools that is intended to deal with such matters as academic performance, academic dishonesty and school yard bullying (Appellee Br. 38-39), but Defendants do so without distinguishing *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 663 F.3d 81, 93-94 (2d Cir. 2011), and without defending the District Court's misreading of *Davis v. Monroe Bd. of Education*, 526 U.S. 629 (1999) (Appellant Br. 44-45). That Defendants and the District Court rely upon *Yu v. Vassar*, 97 F. Supp.3d 448, points to the error of granting summary judgment here. (Appellant Br. 45-46.)

## IV.

## JOHN'S DUE PROCESS CLAIM

Defendants defend the District Court's grant of summary judgment dismissing the due process claim based on an inadequate series of rationalizations.

1. Defendants' statement of state action law (Appellee Br. 40) is deficient in comparison to John's statement of state action law based on the U.S. Supreme Court's review in *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. at 296. (Appellant Br. 47-48).

2. Defendants assert again John "waived" an argument, this time concerning delegation (Appellee Br. 41); and as before, the waiver argument is without merit. John in his summary judgment briefing argued the state action law as elucidated in *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. at 296, which while itself an entwinement case recognizes other state action theories such as delegation, and John expressly referred to the delegation theory of state action and the close nexus between state action and the challenged action by, among other things, delegation of a public function by the state. (A312, 314.)

3. Defendants assert prosecution is not a public function traditionally reserved to the State exclusively. (Appellee Br. 41-42.) The cases cited by Defendants show the weakness of their argument. *Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974), involved a utility company; utilities can be public or private. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1995), involved a private concert promoter; concert promoters are typically private. *Rochez v. Mittleton*, 839 F.Supp. 1075 (S.D.N.Y. 1993), involved the dismissal of a private criminal prosecution; the Court noted that private prosecutors were "certainly not

the norm." 839 F.Supp. at 1081.  Also, private criminal prosecutors have to live by the due process rules of the legal system.

4.      Defendants assert there has been no delegation of the state's prosecutorial function because DU is not prosecuting rape, but rather is evaluating whether campus policy is violated, and DU has not usurped the State's authority. (Appellee Br. 42-44.)    Usurpation is not necessary to effect a delegation. Defendants' argument ignores the role of the April 2011 Dear Colleague Letter in enlisting universities to use their disciplinary procedures to combat sexual assault, including what is rape, by disciplinary sanctions.

5.      Defendants assert actions by the Federal Government are irrelevant to John's due process claim.  (Appellee Br. 44-45.)  As discussed in the Appellant Brief (pp. 53-54), the case cited by the District Court and Defendants, *Browns v. Mitchell*, 409 F.32d 593 (10th Cir. 1969), is off point (a suspension by a private religious university receiving no state funds from Colorado did not constitute state action) and that here, the April 2011 Dear Colleague Letter required universities to determine cases covered by state criminal law.   (Appellant Br. 53-54.)

6.      Defendants assert receipt of federal funds and risk of defunding do not establish state action.  (Appellee Br. 45-49.) As discussed in the Appellant Brief (pp. 50-51), it does here where the state's exercise of "coercive power" in cutting off government money unless the school does what the government wants.

7.     Defendants assert the Supreme Court case law does not establish state action.  (Appellee Br. 49-51.)  As discussed in the Appellant Brief (pp. 47-50), it does.

8.     Defendants assert that the cases cited by the District Court are on point. (Appellee Br. 51-54.)  The problem remains, as discussed in the Appellant Brief (pp. 55-56), that those unofficially reported cases either did not provide an appropriate occasion for considering the question or did so unpersuasively like the District Court here.

9.     Defendants assert that John's "it cannot be" policy argument over the lack of fair notice and a hearing fails because DU is not adjudicating a criminal sexual assault case. (Appellee Br. 54-55.)  But DU and other universities are adjudicating sexual assault; the point of the April 2011 Dear Colleague letter was to enlist universities in combatting sexual assault.

## V.

## JOHN'S BREACH OF CONTRACT CLAIM

Defendants' defense of the District Court's declining to exercise jurisdiction over John's state law claim rests upon the erroneous dismissal of John's federal claims.  (Appellee Br. 55.)

## CONCLUSION

For the reasons stated above and in John's Appellant Brief, this Court should: (i) reverse the grant of DU Defendants' motion granting summary judgment dismissing the action, (ii) remand the case to the District Court for trial and (iii) grant such other and further relief as this Court deems just and proper.

**Dated:**  **November 14, 2018**

*/s/ Philip A. Byler*
Philip A. Byler, Esq. (Counsel of Record)
Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Jeffrey Berkowitz, Esq.
Tara Davis, Esq.
**NESENOFF & MILTENBERG, LLP**
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212) 736-4500
(212) 736-2260 Fax
pbyler@nmllplaw.com
amiltenberg@nmllplaw.com

-and-

*/s/ Michael J. Mirabella*
Michael J. Mirabella, Esq.
Patricia Mellen, Esq.
**MICHAEL J. MIRABELLA, P.C.**
1888 Sherman St. #200
Denver, Colorado 80203
720-538-0362
720-232-8231 (cell)
mmirabella@mbellalaw.com
pat@patmellenlaw.com

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I hereby certify that this Appellant's Reply Brief was produced in Times New Roman (a proportionally-spaced typeface), 14-point type and contains 6,500 words (based on Microsoft Word processing system word count function).

Dated:  New York, New York
        November 14, 2018

**NESENOFF & MILTENBERG, LLP**

By: */s/ Philip A. Byler, Esq.*
**Philip A. Byler**, Esq. (Counsel of Record)
**Andrew T. Miltenberg, Esq.**
**Stuart Bernstein, Esq.**
**Jeffrey Berkowitz, Esq.**
**Tara Davis, Esq.**
**363 Seventh Avenue - Fifth Floor**
**New York, New York 10001**
**212.736.4500**
pbyler@nmllplaw.com

       -and-

*/s/ Michael J. Mirabella*
**Michael J. Mirabella, Esq.**
**Patricia Mellen, Esq.**
**Michael Mirabella, P.C.**
**1888 Sherman St. #200**
**Denver, CO  80203**
**720-538-0362**
**720-232-8231 (cell)**
mmirabella@mbellalaw.com

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF PRIVACY REDACTIONS
## PURSUANT TO 10TH CIR. R. 25.5

I hereby certify that, per the Court's Rules, all redactions have been made

(SSNs, birth dates, financial account numbers, etc.) to the Appellant's Reply Brief.

**Dated:  New York, New York**
**November 14, 2018**

**NESENOFF & MILTENBERG, LLP**

**By: */s/ Philip A. Byler, Esq.***
**Philip A. Byler**, Esq. (Counsel of Record)
**Andrew T. Miltenberg, Esq.**
**Stuart Bernstein, Esq.**
**Jeffrey Berkowitz, Esq.**
**Tara Davis, Esq.**
**363 Seventh Avenue - Fifth Floor**
**New York, New York 10001**
**212.736.4500**
**pbyler@nmllplaw.com**

-and-

*/s/ Michael J. Mirabella*
**Michael J. Mirabella, Esq.**
**Patricia Mellen, Esq.**
**Michael Mirabella, P.C.**
**1888 Sherman St. #200**
**Denver, CO  80203**
**720-538-0362**
**720-232-8231 (cell)**
**mmirabella@mbellalaw.com**

*Attorneys for Plaintiff-Appellant*

## <u>CERTIFICATE OF IDENTICAL HARD COPY</u>

I hereby certify that the PDF of the Appellant's Reply Brief is identical to the printed hard copies.

**Dated:  New York, New York**
**November 14, 2018**

**NESENOFF & MILTENBERG, LLP**

**By:** */s/ Philip A. Byler, Esq.*
**Philip A. Byler**, **Esq. (Counsel of Record)**
**Andrew T. Miltenberg, Esq.**
**Stuart Bernstein, Esq.**
**Jeffrey Berkowitz, Esq.**
**Tara Davis, Esq.**
**363 Seventh Avenue - Fifth Floor**
**New York, New York 10001**
**212.736.4500**
pbyler@nmllplaw.com

**-and-**

*/s/ Michael J. Mirabella*
**Michael J. Mirabella, Esq.**
**Patricia Mellen, Esq.**
**Michael Mirabella, P.C.**
**1888 Sherman St. #200**
**Denver, CO  80203**
**720-538-0362**
**720-232-8231 (cell)**
mmirabella@mbellalaw.com

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF VIRUS SCAN

I hereby certify that, per the Court's Rules, a virus-detection program was run on the electronic Appellant's Reply Brief, and no virus was detected. The program used was Windows Defender, Antimalware client version 4.18.1807.18075, and most recently updated on November 13, 2018.

**Dated: New York, New York**
**November 14, 2018**

**NESENOFF & MILTENBERG, LLP**

**By:** */s/ Philip A. Byler, Esq.*
**Philip A. Byler**, Esq. (Counsel of Record)
**Andrew T. Miltenberg, Esq.**
**Stuart Bernstein, Esq.**
**Jeffrey Berkowitz, Esq.**
**Tara Davis, Esq.**
**363 Seventh Avenue - Fifth Floor**
**New York, New York 10001**
**212.736.4500**
**pbyler@nmllplaw.com**

**-and-**

*/s/ Michael J. Mirabella*
**Michael J. Mirabella, Esq.**
**Patricia Mellen, Esq.**
**Michael Mirabella, P.C.**
**1888 Sherman St. #200**
**Denver, CO 80203**
**720-538-0362**
**720-232-8231 (cell)**
**mmirabella@mbellalaw.com**

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2018, I electronically filed the foregoing Appellant's Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit through the Court's CM/ECF system.

I further certify that the participants in this case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated: New York, New York
November 14, 2018

NESENOFF & MILTENBERG, LLP

By: */s/ Philip A. Byler, Esq.*
**Philip A. Byler**, Esq. (Counsel of Record)
**Andrew T. Miltenberg, Esq.**
**Stuart Bernstein, Esq.**
**Jeffrey Berkowitz, Esq.**
**Tara Davis, Esq.**
**363 Seventh Avenue - Fifth Floor**
**New York, New York 10001**
**212.736.4500**
pbyler@nmllplaw.com

-and-

*/s/ Michael J. Mirabella*
**Michael J. Mirabella, Esq.**
**Patricia Mellen, Esq.**
**Michael Mirabella, P.C.**
**1888 Sherman St. #200**
**Denver, CO 80203**
**720-538-0362**
**720-232-8231 (cell)**
mmirabella@mbellalaw.com

*Attorneys for Plaintiff-Appellant*